UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHARLTON HOLMES                                         CIVIL ACTION

VERSUS                                                  NUMBER: 17-10927

JEFFERSON PARISH CORRECTION                             SECTION: "A"(5)
CENTER "KITCHEN CBM,"
ET AL.

## REPORT AND RECOMMENDATION

This 42 U.S.C. §1983 proceeding was filed *in forma pauperis* by *pro se* Plaintiff, Charlton Holmes, against Defendants, the "CBM Kitchen Staff" of the Jefferson Parish Correctional Center ("JPCC"), the collective Medical Department at JPCC, and the Security/Administrative/Day Watch Staff at JPCC. (Rec. docs. 4; 1, pp. 1, 4).

Plaintiff is an inmate of JPCC since his arrest on an unspecified criminal charge or charges on February 3, 2017. (Rec. doc. 1, p. 3). Plaintiff alleges that on July 10, 2017, he and approximately 200 other inmates became ill after consuming a prison-issued meal and that he was thereafter not provided with adequate medical treatment despite twice requesting same "on paper" that day, the following day, and on August 10, 2017. (*Id.* at p. 4). Plaintiff further alleges that at some point he was placed in a holding cell despite his symptoms and that the use of pepper spray was threatened to coerce inmates to sign some type of waiver form. (*Id.* at p. 5). In his prayer for relief, Plaintiff seeks justice for those affected in the incident like himself, to receive appropriate responses to jail grievances that were filed as a result thereof, freedom from the deprivation of his civil rights, and court costs. (*Id.*).

Plaintiff also attaches to his complaint a copy of an "Inmate Grievance Form" dated July 10, 2017 that he submitted in connection with the incident. (Rec. doc. 1, p. 6). In that form, Plaintiff explained that on the aforementioned date, he was awakened by stomach pain

and subsequently had two bowel movements within a span of two hours accompanied by an episode of nausea and feelings of dizziness/lightheadedness and a sour stomach. (*Id.*). Plaintiff speculated that the cause of these symptoms had to be something in the prison food that he had consumed that day or the day before. (*Id.*). Plaintiff further explained that after filling out a medical request form, he had spoken with various unidentified jail officials about the incident. (*Id.*).

As noted above, Plaintiff has instituted suit herein *in forma pauperis* pursuant to 28 U.S.C. §1915. A proceeding brought *in forma pauperis* may be dismissed as frivolous under §1915(e)(2)(B)(i) if the claim alleged therein has no arguable basis in law or fact, *Booker v. Koonce*, 2 F.3d 114, 115 n. 6 (5th Cir. 1993), or if it fails to state a claim upon which relief can be granted. 28 U.S.C. §1915(e)(2)(B)(ii); *see also* 28 U.S.C. §1915A(b), 42 U.S.C. §1997e(c). Giving the instant complaint a liberal reading, it is the recommendation of the undersigned Magistrate Judge that this matter be dismissed as frivolous and for failing to state a claim upon which relief can be granted.

Plaintiff alleges that he became ill after consuming reportedly contaminated prison food on July 9 or 10, 2017. In *George v. King*, 837 F.2d 705 (5th Cir. 1988), the Fifth Circuit affirmed a district court's dismissal of a prisoner's complaint as frivolous under 28 U.S.C. §1915(d)(the predecessor statute to §1915(e)(2)(B)(i)), holding that a single incident of unintended food poisoning, whether suffered by one or many prisoners at an institution, did not constitute a violation of the prisoner's constitutional rights. *Id.* at 707. The Court likened the situation to "… the kind occasionally experienced by those in military service or in other institutional settings, as well as individually in the more routine course of daily life." *Id.* The negligent preparation of a single meal does not rise to the level of a constitutional violation.

*Id.* (citing *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986)(and other cases)). "Were it otherwise, the federal courts would of necessity become the forums for determining the propriety and desirability of virtually all details of prison food service management and procedures, as in such institutional settings occasional food poisoning of this character, which is not productive of truly serious medical complications or permanent injury, is almost inevitable." *Id.* The *George* decision continues to be good law in the Fifth Circuit. *See, e.g., Doolittle v. Jarvis*, 387 Fed.Appx. 499, 500 (5th Cir. 2010); *Miller v. St. Tammany Parish Jail*, No. 08-CV-4694, 2008 WL 5111146 at *2 (E.D. La. Dec. 4, 2008); *Thomas v. Rayburn Correctional*, No. 07-CV-9203, 2008 WL 417759 at *2 (E.D. La. Feb. 13, 2008). While the episode of which Plaintiff complains may have been unpleasant, the holding in *George* effectively defeats his claim regarding negligent food preparation.

The Court must next determine whether Plaintiff's complaint raises an arguable claim for denial of needed medical care. In order to prevail on such a claim, a prisoner must demonstrate that he was denied medical treatment and that this denial constituted "deliberate indifference" to his serious medical needs, which constituted an unnecessary and wanton infliction of pain.[1] *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 2323 (1991). Deliberate indifference is an "extremely high" standard to meet, *Gobert v. Caldwell*, 463 F.3d 399, 346 (5th Cir. 2006), one that has been equated with "subjective recklessness" as that term is used in criminal law. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997). A prison official shows deliberate indifference if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

---

[1] This standard is the same for both pre-trial detainees and convicted prisoners. *Hale v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996).

3

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994).

"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346 (footnote omitted). If an inmate in fact receives medical treatment, federal constitutional protections are not violated simply because that treatment was unsuccessful. *Gobert*, 463 F.3d at 345; *Williams v. Chief of Medical Operations, Forrest County Jail*, No. 94-CV-10115, 1994 WL 733493 at *2 (5th Cir. Dec. 27, 1994); *Kron v. Tanner*, No. 10-CV-0518, 2010 WL 3199854 at *7 (E.D. La. May 19, 2010), *adopted*, 2010 WL 3171040 (E.D. La. Aug. 6, 2010). That an inmate's medical care "… may not have been the best money could buy" is also insufficient to establish a constitutional violation. *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992).

For the reasons that follow, the Court is of the opinion that no viable claim of deliberate indifference lies here, particularly as respects the named Defendants. First of all, guided by *George*, it is questionable whether the symptoms described by Plaintiff can be characterized as "serious medical needs" in a constitutional sense. *George*, 837 F.2d at 705-07 (stomach cramps, diarrhea, and nausea not productive of truly serious medical complications or permanent injury). In addition, so as to facilitate the statutory screening of Plaintiff's complaint as mandated by §1915A(a), earlier on in this case the Court issued an order directing the Warden of JPCC to provide the undersigned with a certified copy of, *inter alia*, Plaintiff's medical records, grievance-related records, and disciplinary and incident reports, with a copy thereof to be provided to Plaintiff as well. (Rec. doc. 3). Those records,

upon which the Court may properly rely, *Gobert*, 463 F.3d at 346 n. 24, have since been provided. (Rec. doc. 5).

A review of the records that are before the Court reveals only a scant number of "Request for Medical Services" forms that were completed by Plaintiff during his incarceration at JPCC, none of which relate to the incident of which he complains herein. The closest of those in date to the incident in question was a medical request form that Plaintiff completed on August 12, 2017 in which he complained of the effectiveness of pain medication that had been provided to him for a broken finger and his inability to bend that finger. The lack of a properly completed medical request form notwithstanding, the computerized medical records that have been provided to the Court, a portion of which number 174 pages in length, contain a notation dated July 10, 2017 at 5:31 p.m. that reads "[i]nmate complaining of gastric distress and diarrhea since 3:00 AM. [S]ee V/S flowsheet." (p. 156 of 174). A subsequent entry from that same date and time indicates that Plaintiff's vital signs were duly taken by medical personnel (p. 162 of 174), a response that the Fifth Circuit panel in *George* characterized as of "… at least minimal adequacy …" *George*, 837 F.2d at 705-06.

The records provided to the undersigned also contain a copy of the "Inmate Grievance Form" that Plaintiff attached to his complaint, one that he clearly directed to the Special Investigation Unit ("SIU"). In answer to that grievance, which was received on July 24, 2017, screened, and construed as a kitchen-related complaint, a jail official with the Food Services Division responded as follows:

> After reviewing your grievance I have marked it unfounded for the following reasons; CBM has a long established food safety and food sample testing program protocol. This protocol was activated in response to the concern surrounding multiple symptoms exhibited by some inmates. Frozen food

5

samples were overnight expressed to an independent testing laboratory which conducted microbiological testing on the samples. The test results on those food samples came back negative. Additionally, the symptomatic inmates were all confined to a limited portion of the jail. Given the fact that all inmates throughout the jail had consumed the same meals prior to the onset of symptoms, it is highly unlikely that food was a contributing factor, and the negative test results on the food samples bear that out. The most likely culprit that caused the illnesses was a contagious virus.

In answer to the foregoing Step 1 "Response to Grievance," Plaintiff submitted a two-page letter directed to Internal Affairs in which he admits that in response to his request for medical treatment on July 10, 2017, he and other inmates had their vital signs checked by a nurse, were segregated, and were offered chicken broth but were not served a lunchtime meal. Plaintiff then goes on to describe the alleged efforts of jail officials to coerce inmates to sign waiver forms regarding the incident. Plaintiff concludes by noting that two alleged inmate suicides occurred in the recent past but were not reported on local news outlets. On November 18, 2017, the CBM Regional Director of Food Service also found Plaintiff's grievance to be unfounded for the same reasons that were assigned at Step 1.

Plaintiff's complaint, which he signed on October 5, 2017 and was received by the Clerk's Office two weeks later, makes no mention of any residual problems resulting from the single incident complained of. What the records summarized above point to is that in response to symptoms experienced by a number of inmates on July 10, 2017, those inmates were screened by medical personnel, were segregated from other non-afflicted prisoners, and were offered broth rather than a regular lunchtime meal. In the follow-up investigation that was provoked as a result of Plaintiff's grievance, food samples were sent off-site for testing to rule out contamination and it was concluded that a contagious virus was likely the cause of the affected inmates' symptoms. These summarized records fall short of establishing the objective and subjective components needed to prevail on a claim of

6

deliberate indifference. With respect to Plaintiff's allegations that he and other inmates were coerced into signing some sort of waiver, he was obviously not prevented from filing this lawsuit and the law is clear that verbal abuse or threatening language of a correctional officer do not, even if true, amount to constitutional violations. *Harvey v. Stadler*, 130 Fed.Appx. 654 (5th Cir. 2005); *Wilson v. Budner*, 976 F.2d 957, 958 (5th Cir. 1992). The law is also clear that the failure to provide Plaintiff with one or even several meals presents no constitutional violation. *Hill v. Gusman*, No. 06-CV-0527, 2006 WL 3760454 at *4 (E.D. La. Dec. 18, 2006)(and cases cited therein).

Finally, the named Defendants in this matter are not viable as such. It is well-established that Section 1983 imposes liability on any "person" who violates another individual's rights under color of state law. 42 U.S.C. §1983; *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 664 (1986). On that score, a department or the collective staff of a department within a prison facility are not considered to be suable entities under §1983. *Howard v. Gusman*, No. 11-CV-2602, 2011 WL 6130763 at *2-3 (E.D. La. Nov. 17, 2011), *adopted*, 2011 WL 6148592 (E.D. La. Dec. 8, 2011); *Clay v. Nelson Coleman Corr. Center Medical Staff and Corr. Officers*, No. 10-CV-1590, 2011 WL 7659002 at *3 (E.D. La. Oct. 28, 2011), *adopted*, 2012 WL 1188463 (E.D. La. Apr. 9, 2012); *Walker v. Dallas County Sheriff's Medical Dept.*, No. 02-CV-1546, 2002 WL 31553930 at *2 (N.D. Tex. Nov. 13, 2002). In the absence of a properly identified Defendant, there are no appropriate juridical persons before the Court against whom judgment may properly be entered under Rule 17(b), Fed. R. Civ. P. *Howard*, 2011 WL 6130763 at *2-3; *Allen v. Gusman*, No. 05-CV-1633, 2006 WL 286007 at *3

n. 8 (E.D. La. Feb. 2, 2006). This provides an additional basis for the dismissal of Plaintiff's suit.

## RECOMMENDATION

For the foregoing reasons, it is recommended that Plaintiff's suit be dismissed with prejudice pursuant to 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[2]

New Orleans, Louisiana, this  9th  day of       March      , 2018.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[2] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.

8